IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | |
|---|---|
| ANTHONY HAMMOND MURPHY, | ) |
| | ) |
| Plaintiff, | ) 1:23-CV-00079-RAL |
| | ) |
| vs. | ) RICHARD A. LANZILLO |
| | ) CHIEF UNITED STATES |
| SPONGELLE LLC, | ) MAGISTRATE JUDGE |
| | ) |
| Defendant, | ) AMENDED MEMORANDUM OPINION ON |
| | ) DEFENDANT'S MOTION TO DISMISS |
| | ) |
| | ) IN RE: ECF NO. 9 |
| | ) |

I.      Background

Plaintiff Anthony Hammond Murphy ("Murphy") brings this action against Defendant

Spongelle LLC ("Spongelle")[1] alleging that its website, https://spongelle.com/, is not accessible

to visually impaired individuals to the extent required by the Americans with Disabilities Act of

1990, 42 U.S.C. § 12101, *et seq.* ("ADA").  Spongelle has moved to dismiss Murphy's

Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that its website is not a "place of

public accommodation" within the meaning of Title III of the ADA, 42 U.S.C. § 12182(a).  *See*

ECF No. 9.

---

[1] The Defendant includes a diacritical mark in its name ("Spongellé").  For typographical reasons, the Court will not include the acute accent mark in this opinion.

Spongelle's motion presents an issue concerning which significant disagreement exists among the federal courts, including district courts within the Third Circuit. The controversy is not surprising given that public websites did not exist when the ADA was enacted in 1990. Indeed, the first web server in the United States was not activated until December of 1991. *See A Short History of the Web, CERN*, available at https://home.cern/science/computing/birth-web/short-history-web (last visited on July 9, 2023). By some estimations, the first commercial sale of an item from a website did not take place until 1994. *Id.* Given this history, it is unlikely that Congress considered website accessibility when it debated and ultimately passed the ADA. *See id.*

Commerce is obviously far different today than in 1990. By 2017, consumers were purchasing more than fifty percent of their goods and services online. *See Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *1 (S.D.N.Y. Nov. 20, 2017), *report and recommendation adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018) (citing Laura Stevens, *Survey Shows Rapid Growth in Online Shopping*, WALL STREET JOURNAL, (June 8, 2016), available at https://www.wsj.com/articles/survey-shows-rapid-growth-in-online-shopping-1465358582. Then, in 2020, the COVID-19 pandemic dramatically increased consumers' reliance on websites for purchases of goods and access to services. *See, e.g., Lebamoff Enterprises Inc. v. Whitmer*, 956 F.3d 863, 878 (6th Cir. 2020) (McKeague, J., *concurring*, and noting that "[w]e live in a global economy and we shop in virtual marketplaces for everything from luxuries to necessities. And we now rely even more on online shopping in the recent pandemic."); *see also Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 500 (2d Cir. 2022) (noting increased demand for online shopping during the pandemic).

2

Murphy is one of many blind or visually impaired individuals who use the Internet to purchase products and services and who rely on "screen access software to access digital content." *See, e.g.,* ECF No. 1, ¶¶1, 3.  Murphy contends that he is being deprived of "full and equal access" to Spongelle's products and services because its website is not fully compatible with screen reader software as required by Title III of the ADA. *Id.,* ¶ 3.

Spongelle correctly notes that Murphy's Complaint "makes no allegation that Spongelle operates a physical place of business and instead alleges that Spongelle's operations occur through its 'Digital Platform.'" ECF No. 10, pp. 1-2 (citing ECF No. 1 (Complaint), ¶¶ 3, 4, 19, 34). Thus, the issue before the Court in this case is whether Title III imposes accessibility requirements on a retail website that has no nexus to a physical place. The issue has been fully briefed and argued. *See* ECF Nos. 9, 17, 18, 20. As discussed below, the Court concludes that precedent compels a holding that Spongelle's website and related digital applications are not subject to Title III of the ADA.[2]

II.     Standard of Review

Spongelle moves to dismiss Murphy's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court accepts as true the complaint's factual allegations and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). *See also Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to

---

[2] The parties have voluntarily consented to the jurisdiction of a United States Magistrate Judge in this case pursuant to 28 U.S.C. § 636(c)(1).

prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Therefore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)).

While a complaint need not include detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts alleged in the complaint. *See California Pub. Employee Ret. Sys. V. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Put another way, while the Court must view the factual allegations of the complaint as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). With these standards in mind, the Court now turns to Murphy's Complaint and Spongelle's motion.

4

III.   The Complaint

Murphy is legally blind and relies on screen reader software to access digital content, including websites.  ECF No. 1, ¶ 1.  Spongelle "is a retailer that sells bath sponges, buffers, and cleansers to consumers."  *Id.*, at ¶ 2.  "In order to access, research, or purchase [its] products and services, consumers may visit [Spongelle's] online store, located at https://spongelle.com/ and available for download from the Apple App Store and Google Play (the 'Digital Platform')."  *Id.*, at ¶ 2.  Spongelle "owns, operates, and/or controls its Digital Platform and is responsible for the policies, practices, and procedures concerning the Digital Platform's development and maintenance."  *Id.*, ¶ 19.

In February of 2023, Murphy or others acting on his behalf attempted to access Spongelle's website and discovered that it "prevents screen reader users from accessing some primary content," including "discount code" offers, and "an accessibility menu that consumers may click to view or adjust the accessibility settings."  ECF No. 1, ¶ 31(a)-(b).  Murphy also determined that the website "does not provide a text equivalent for non-text elements…[to] allow[] … [a] person who cannot see a picture, logo, or icon [to] have a text alternative read aloud using synthesized speech," that the website "fails to notify screen readers when [a] visual effect appears," and that the website uses different fonts and strike-throughs to convey pricing and other information that screen readers cannot accurately interpret.  ECF No. 1, ¶ 31(c)-(e).  These incompatibilities between Spongelle's Digital Platform and screen reader software deny "blind individuals, including Murphy, full and equal access to Defendant's products and services."  *Id.*, ¶ 3.  As relief, Murphy's Complaint seeks an injunction mandating, among other things, that Spongelle make its website fully compatible with screen reader software.  *Id.* at p 17.

IV.    Discussion and Analysis

   A.    Title III of the ADA

Title III of the ADA states as a "general rule":

> No individual shall be discriminated against on the basis of
> disability in the full and equal enjoyment of the goods, services,
> facilities, privileges, advantages, or accommodations of any place
> of public accommodation by any person who owns, leases (or
> leases to), or operates a place of public accommodation.

42 U.S.C. §12182(a). *See also McGann v. Cinemark USA, Inc.*, 873 F.3d 218, 222 (3d Cir.

2017).

   Murphy claims that Spongelle's failure to ensure that its website is "fully and equally

accessible through screen reader auxiliary aids" denies him an opportunity to "access [its] online

community, products, and services" in violation of Title III's "general anti-discrimination

mandate and effective communication requirement."  ECF No. 1, ¶¶ 54, 55.  For purposes of its

motion to dismiss, Spongelle does not contest Murphy's allegations that it owns and operates its

website or that its incompatibility with screen reader technology denies him full and equal access

to products and services offered through its website.  Rather, it challenges the legal sufficiency

of Murphy's Title III claim on the grounds that its website and other digital properties are not a

"place of public accommodation" within the meaning of 42 U.S.C. § 12182(a).

   Although the Court of Appeals for the Third Circuit has yet to address directly whether a

website can be considered a "place of public accommodation," it has "taken the position that the

term is limited to physical accommodations." *Peoples v. Discover Financial Serv., Inc.*, 387

Fed. Appx. 179, 183 (3d Cir. 2010).  In order to satisfy this requirement, the Court of Appeals

has "required at the very least some 'nexus' between the physical place of public accommodation

and the services denied in a discriminatory manner." *Menkowitz v. Pottstown Memorial Med.*

*Cntr.*, 154 F.3d 113, 120 (3d Cir. 1998) (joining the position of the Court of Appeals for the Sixth Circuit). The Court of Appeals first alluded to the nexus requirement in *Ford v. Schering-Plough Corp.*, where it reasoned that "[t]he plain meaning of Title III is that a public accommodation is a place, leading to the conclusion that '[i]t is all of the services which the public accommodation offers, not all services which the lessor of the public accommodation offers[,] which fall within the scope of Title III.'" 145 F.3d 601, 612 (3d Cir. 1998). The Court also found support for this interpretation in "the host of examples of public accommodations provided by the ADA, all of which refer to places." *Id.* at 612-13. *See also, Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) ("Title III provides an extensive list of 'public accommodations' in § 12181(7) … All the items on this list, however, have something in common. They are actual, physical places where goods or services are open to the public, and places where the public gets those goods or services … [T]his context suggest that some connection between the good or service complained of and an actual physical place is required."). Based on these principles, the Court in *Ford* rejected the plaintiff's Title III claim that an insurance company had discriminated against her in the payment of disability benefits received through her employer because no connection existed between the discriminatory benefits and the insurer's physical place of public accommodation. *Id.* at 613. The Court explained that "[s]ince Ford received her disability benefits via her employment at Schering, she had no nexus to MetLife's 'insurance office' and thus was not discriminated against in connection with a public accommodation." *Id.*, at 612-13.

Later, in *Peoples v. Discover Financial Services*, the Court of Appeals followed *Ford* in affirming the district court's dismissal of a Title III claim against the plaintiff's credit card servicing company for failing to consider his blindness when he disputed an allegedly fraudulent

credit card charge by a service provider. 387 Fed. Appx. 179 (3d Cir. 2010). The Court
explained:

> Under *Ford*, [plaintiff's] argument fails because the
> communication between [the service provider's] credit card
> processing terminal and [credit card servicing company] is not a
> "public accommodation" within the meaning of the ADA. ... As
> the District Court noted, "[t]he evidence is that [plaintiff] used his
> Discover Card to pay for the transactions with [the service
> provider] at her apartment," and, "[t]hough [the company's] credit
> services can be used by cardmembers at a merchant's place of
> accommodation, [the credit card servicing company] itself does not
> own, lease or operate those locations." Thus, because [the credit
> card servicing company's] alleged discrimination (*i.e.*, the
> supposedly insufficient investigation of [plaintiff's] fraud claim) in
> no way relates to the equal enjoyment of goods, services, facilities,
> privileges, advantages, or accommodations *on physical property*
> that [the credit card servicing company], rather than [the service
> provider], owns, leases, or operates, the District Court correctly
> granted summary judgment against [plaintiff] on his ADA claim.

*Id.*, 387 Fed. Appx. at 183–84 (emphasis supplied). In other words, the plaintiff failed to

demonstrate the required nexus between the defendant credit card servicing company's physical

place of public accommodation and its discriminatory denial of services because the credit card

servicing company did not own, lease, or operate any physical property from which it

discriminated against the plaintiff.

In contrast to *Ford* and *Peoples*, the Court of Appeals in *Menkowitz* found a nexus

"between the services or privileges denied and the physical place of the [defendant] hospital as a

public accommodation" sufficient to support the plaintiff's Title III claim. *Menkowitz*, 154 F.3d

at 122. The plaintiff, a medical doctor with staff privileges at the defendant hospital, claimed

that it denied him "full and equal enjoyment of ... privileges, advantages, or accommodations of

[a] place of public accommodation" in violation of Title III when it suspended his staff privileges

without reasonable accommodation of his attention deficit disorder disability. *Id.* at 115. Unlike

in *Ford* and *Peoples*, the discrimination alleged—suspension of his hospital privileges—denied the plaintiff equal enjoyment of privileges that had the requisite nexus to a physical place owned, operated, or leased by the hospital.[3]

Relying upon *Ford*, *Peoples*, and *Menkowitz*, some district courts in this Circuit have held that a website can be considered a place of public accommodation only if the plaintiff alleges a nexus between the defendant's discrimination and a physical place. *See, e.g., Mahoney v. Herr Foods Inc.*, 2020 WL 1979153, at *3 (E.D. Pa. Apr. 24, 2020) (holding "a website, on its own, is not a public accommodation within the meaning of the ADA."); *Mahoney v. Bittrex, Inc.*, 2020 WL 212010, at *2 (E.D. Pa. Jan. 14, 2020) (holding that a website falls within the scope of Title III on "if Plaintiff alleges that it shares some nexus with a physical place of public accommodation"); *Tawam v. APCI Fed. Credit Union*, 2018 WL 3723367, at *6 (E.D. Pa. Aug. 6, 2018) ("The website is a service offered by [defendant] and therefore may be subject to the ADA if it has a sufficient nexus to [defendant's] physical location."). *See also Demetro v. Nat'l Ass'n of Bunco Investigations*, 2019 WL 2612687, at *15 (D.N.J. June 25, 2019) ("None of these enumerated places of public accommodation are electronic in nature, or online" and ... "the Third Circuit has held that, in the context of Title III of [ADA], the term "public accommodation ... is limited to *physical* accommodations.") (emphasis in original); *Doe v. Independence Blue Cross*, 2023 WL 8050471, at *7 (E.D. Pa. Nov. 21, 2023) (recognizing the general applicability of the "nexus test").

---

[3] "While courts agree a nexus is necessary, few have defined the nexus precisely." *Gomez v. Gen. Nutrition Corp.*, 323 F. Supp. 3d 1368, 1375 (S.D. Fla. 2018). But what seems to be essential to the Third Circuit's nexus requirement is an allegation that a website's inaccessibility interferes with the "full and equal enjoyment" of the goods and services offered at a corresponding physical location. *Tawam v. APCI Fed. Credit Union*, 2018 WL 3723367, at *6 (E.D. Pa. Aug. 6, 2018) (quoting 42 U.S.C. § 12182(a)). The Court need not precisely define the requisite "nexus" in this case, however, because Murphy's Complaint presently includes no allegations regarding any physical location owned, leased, or operated by Spongelle.

This view, however, is not unanimous. For example, in *Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, 251 F. Supp. 3d 908, 915 (W.D. Pa. 2017), the Court acknowledged the *Ford* and *Peoples* decisions but nonetheless held a bank's website to be a place of public accommodation for purposes of an ADA claim. The Court distinguished *Ford* and *Peoples* on the grounds that the alleged discrimination took place "at a location where neither the insurance carrier in *Ford*, nor the credit card company in *Peoples*, had ownership or possession, or exercised control." *Id.* at 918. The Court reasoned that because the alleged discrimination in *Gniewkowski* took place on property the defendant owned and operated (namely their website), *Ford* and *Peoples* did not apply. *Id. See also, West v. DocuSign, Inc.*, 2019 WL 38443054 (W.D. Pa. August 28, 2019); *Suchenko v. ECCO USA, Inc.*, 2018 WL 3933514, at *3 (W.D. Pa. Aug. 16, 2018).

Murphy argues that *Ford* and *Peoples* do not support Spongelle's position because the "[t]he indirect relationship between defendants and the places at issue is why Title III did not apply in *Ford* and *Peoples*, not some imaginary 'physical nexus' requirement that renders Title III ineffective in a twenty-first century digital economy." ECF No. 17, p. 18. Murphy also urges the Court to reject the nexus test because a "physical nexus" or "brick-and-mortar" requirement "appears nowhere in the text of Title III." ECF No. 17, p. 5. The nexus requirement, he further contends, is inconsistent "with the Supreme Court's 2020 decision in *Bostock v. Clayton Cty.*, where the Court explained that plain terms control even when the legislature may not have anticipated every potential application of its words." *Id.*, at 6 (quoting *Bostock v. Clayton Cty., Georgia*, 590 U.S. ---, 140 S. Ct. 1731, 37, 50 (2020)). Murphy is correct that while the text of the ADA does not define the term "place," it does define "public accommodation" as a "private entity" whose "operations ... affect commerce." 42 U.S.C. § 12181(7). The statute follows with

10

a list of such entities, which include hotels and motels, restaurants, bars, shopping centers, and other sales or rental establishments, and specifies that prohibited discrimination includes denial of an unequal opportunity "to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an *entity*." *Id.* This text both focuses and blurs the distinction between public accommodations and *places* of a public accommodation. On the one hand, the exemplars categorically refer to specific places, while on the other, the statute defines "public accommodation" as a type of private entity and prohibits discrimination concerning not only the entity's facilities, but also its goods, services, privileges, advantages, and accommodations. The question is whether the language of Title III as drafted accommodates the extension of its laudatory purposes to standalone websites. Ultimately, the text is not sufficiently "plain" to hold that *Bostock* commands adoption of Murphy's interpretation over Third Circuit decisions requiring a nexus to a physical location.[4]

Finally, Murphy asks the Court to eschew the nexus test because it would render Title III meaningless and contravene legislative history and authoritative guidance. But, as another district court observed, "[b]ecause the Third Circuit has not extended the ADA's protections to websites beyond the nexus requirement, this Court cannot." *Mahoney v. Bittrex Inc.*, 2020 WL 212010, at *3 (E.D. Pa. Jan. 14, 2020). Although neither *Ford*, *Peoples* nor *Menkowitz* directly addressed a standalone website or other digital property, the nexus requirement articulated in those cases appears to be controlling law in this Circuit. Therefore, absent clarification by the Court of Appeals or action by the Congress, the Court is constrained to apply the nexus test to the facts alleged in this case.

---

[4] Although the Court of Appeals has not identified "cyberspace" as a "place," commentators have noted that "cyberspace seems to be … a persistent space where people gather, spend their time, and interact." Mariotti, Renato, *Cyberspace in Three Dimensions*, 55 Syracuse L.R. 251, 254 (2005).

Because Murphy has failed to allege facts to support a nexus between a physical place of public accommodation owned, operated, or controlled by Spongelle and the goods or service Spongelle has denied in a discriminatory manner, Murphy's Complaint fails to state a claim under Title III of the ADA.

V.     Leave to Amend

Because the Court cannot say that amendment of Murphy's Complaint would be futile or inequitable, it will dismiss Murphy's Complaint without prejudice. Murphy may file an amended complaint within twenty (20) day of entry of the Court's order of dismissal. If Murphy fails to file an amended complaint within this time, the Court will enter a further order dismissing this case with prejudice.

VI.    Conclusion

By separate order, Spongelle's motion to dismiss will be granted and Murphy's Complaint will be dismissed without prejudice. Murphy may file an amended complaint within twenty (20) days. A separate Order will follow.

DATED this 9th day of February 2024.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE